UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:

GREG BEECHE, LOGISTICS, LLC,

Debtor.

Chapter 11

Case No. 25-11257-1-pgr

**DECLARATION OF DOTAN Y. MELECH IN SUPPORT OF MOTION TO DISMISS BY SENIOR SECURED CREDITOR MCCORMICK 103, LLC PURSUANT TO 11 U.S.C. § 1112(b) BASED ON A BAD FATIH FILING, OR IN THE ALTERNATIVE, TO EXCUSE THE TURNOVER OF ASSETS BY THE RECEIVER PURSUANT TO 11 U.S.C. § 543(d)**

I, Dotan Y. Melech, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, as follows:

1. I am President of United AMS, LLC and I am the receiver ("Receiver") of Greg Beeche, Logistics, LLC and Greg Logistics, LLC ("Receivership Entities"). On August 8, 2025, I was appointed as Receiver by the United States District Court for the Northern District of New York ("District Court") in the matter of *McCormick 103, LLC v. Greg Beeche, Logistics, LLC and Greg Logistics, LLC*, Civ. Action No. 1:25-cv-00944-AMN-TWD ("Receivership Action"), pursuant to the District Court's Memorandum Decision & Order dated August 8, 2025 and amended on August 11, 2025 (collectively, the "Receivership Order"), a true copy of which is attached as **Ex. A**.

2. I make this declaration in support of McCormick 103, LLC's motion to dismiss this chapter 11 case ("Case") pursuant to 11 U.S.C. § 1112(b), or in the alternative, for relief pursuant to 11 U.S.C. § 543(d) should this Case not be dismissed.

3. In accordance with the Receivership Order, I was appointed with broad authority to take possession, custody, and control of all assets of the Receivership

Entities, including, but not limited to, cash, receivables, equipment, inventory, contracts, intellectual property, and related records ("Receivership Assets"). I was further empowered to manage and operate the Receivership Entities' business(es), employ and terminate personnel, collect income, administer accounts, engage professionals, enter into agreements as necessary, all for the purpose of securing, preserving, and maximizing the value of the Receivership Entities' estate ("Receivership Estate").

4. As of the date of this declaration, no motion has been filed to remove me, and no Order has been entered removing me, as Receiver in the Receivership Action. As a result, I remain in possession, custody, and control of the Receivership Assets.

5. In the performance of my duties as Receiver, I have access to and am familiar with business records maintained by the Receivership Entities. As Receiver, I have personal knowledge of the manner in which these business records are maintained. These records (which include data compilations, electronically imaged documents, and other business records) were/are: (a) made at or near the time of the occurrence of the matters set forth by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records; and (b) kept as a regular practice and in the ordinary course of business conducted by the Receivership Entities. To the extent records in the Receivership Entities' possession come from another entity, those records were received by the Receivership Entities in the ordinary course of their business, have been incorporated into and maintained as part of the Receivership Entities' business records, and have been routinely relied on by the Receivership Entities as part of the regular course of their business. In connection with making this declaration and Receivership Reports (as defined herein), I reviewed and relied on the Receivership Entities' business records.

6. Attached as **Ex. B** is a true copy the Receiver's Inventory and Liabilities Report dated September 2, 2025, filed in the Receivership Action at Docket No. 37-1 ("First Report").

7. Attached as **Ex. C** is a true copy the Receiver's Supplemental Report and Emergency Notice dated September 10, 2025, filed in the Receivership Action at Docket No. 39-1 ("Second Report").

8. Attached as **Ex. D** is a true copy the Receiver's Interim Status Report dated October 24, 2025, filed in the Receivership Action at Docket No. 49-1 ("Third Report," and together with the First Report and Second Report, the "Receivership Reports").

9. The Receivership Reports are true and accurate and are incorporated herein in their entirety.

10. Since my appointment, I have received $353,817.43 in cash receipts from the Receivership Entities customers. Of that amount, I am in possession of $130,444.15. Attached as **Ex. E** is a true copy of the Balance Sheet for the Receivership Entities as of October 24, 2025.

11. The Debtor has accumulated significantly aged accounts receivable. In total, the Debtor has $840,330.96 in accounts receivable. Attached as **Ex. F** is a true copy of the Debtor's Accounts Receivable Aging Summary as of October 24, 2025. Attached as **Ex. G** is a true copy of the Debtor's Accounts Receivable Aging Detail as of October 24, 2025.

12. On October 24, 2025, I received email correspondence from Peter Orville, notifying me that the Debtor had filed for relief under Chapter 11 of the Bankruptcy Code and requesting that I cease my control over the Debtor's property and arrange for the

turnover of all assets, books and records, accounts, access credentials, and other property in my possession, custody, or control. Mr. Orville further notified me that Gregory Beeche would be visiting the premises currently under my possession with a prospective investor and requested that I confirm I would allow Gregory Beeche and the unidentified potential investor access to the premises without impediment ("October 24 Correspondence").

13. I directed my counsel Todd Ritschdorff and McKay Holley to respond to the October 24 Correspondence. On October 26, 2025, Todd Ritschdorff sent email correspondence to Mr. Orville, notifying him that I remained Receiver of the Receivership Assets and could not comply with his request without running afoul of my obligations under the Receivership Order. My counsel further advised Mr. Orville of my position that given the circumstances leading to my appointment, I would be excused from turnover under 11 U.S.C. § 543(d)(1) ("October 26 Correspondence"). Attached as **Ex. H** is a true copy of the October 24 Correspondence and October 26 Correspondence.

14. On October 26, 2025, Gregory Beeche arrived unannounced with bolt cutters at the premises under my control where the Receivership Assets are located. Gregory Beeche used the bolt cutters to gain access to the premises and was on site for less than twenty minutes.

15. On October 27, 2025, Gregory Beeche returned to the premises accompanied by at least fourteen people. At my direction, security briefly denied Gregory Beeche access to the premises while I could discuss the matter with counsel. Ultimately, I instructed security to allow Gregory Beeche access on the condition that security record the names of all attendees and accompany them as they walked through the premises.[1]

---

[1] The attendees are as follows:

16.    On October 29, 2025, Gregory Beeche again arrived unannounced with bolt cutters at the premises and used the bolt cutters to gain access. My team contacted the police and security. Gregory Beeche was recorded by security cameras leaving the premises in a forklift with a box of inventory. My team was able to locate the forklift and box of inventory at a neighboring facility belonging to Kivort Steel.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: October 29, 2025           /s/ Dotan Y. Melech
                                        Dotan Y. Melech

---

1. Gregory Beeche
2. Silvia Beeche
3. Jason Mitola
4. John Palmer
5. Chad Simon
6. Mike Budd
7. Chris Colarusso
8. Tebah Raphael
9. John Persand
10. Joshua Persand
11. Derek Persand
12. David Kazalcavich
13. Kari Bornt
14. Paul Hill
15. Dan Fenelon