UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
IN RE: Greg Beeche Logistics, LLC,

        Debtor.

Chapter 11

Case No. 25-11257

Hon. Patrick R. Radel

# DEBTOR'S OPPOSITION TO EMERGENCY MOTION TO DISMISS BY SENIOR SECURED CREDITOR MCCORMICK 103, LLC…OR…TO EXCUSE THE TURNOVER OF ASSETS BY THE RECEIVER PURSUANT TO 11 U.S.C. § 543(d)

Now comes the Debtor, Greg Beeche Logistics, LLC, ("GBL") Debtor and Debtor in Possession, by and through its attorneys, Orville & McDonald Law, PC, by Peter A. Orville, in opposition to Creditor's Motion, and states as follows:

1. On October 24, 2025, the Debtor filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code.

2. On October 29, 2025, Creditor McCormick 103, LLC filed this emergency motion to dismiss Debtor's Chapter 11 case and/or excuse the Receiver from being required to turnover the assets of the Debtor's estate pursuant to 11 U.S.C. §543(d).

3. Debtor's Chapter 11 case is in its infancy. An Initial Debtor Interview is scheduled for November 21, 2025. A 341 meeting of creditors is scheduled for December 3, 2025. The US Trustee's office has just started its efforts to appoint an Unsecured Creditor's Committee.

## PRELIMINARY STATEMENT

4. The Debtor, GBL was founded in 2001 by Gregory L. Beeche, who has over thirty years of experience in developing innovative work-access technologies. During that time, Beeche revolutionized façade construction with his patented ADT Work Access Systems, a modular, high-performance platform solution designed to enhance job site safety and productivity.

5. The real property in which GBL operates is personally owned by Gregory Beeche. Mr. Beeche also owns the patents and proprietary intellectual property used by GBL. All other assets are owned by GBL. Greg Logistics LLC ("GL") was set up as a separate entity solely to operate GBL's payroll.

6. Over time, Beeche and his team members successfully implemented complex access logistics systems for a prestigious global client list that includes the Burj al Arab in Dubai, the United Nations Secretariat Building, One World Trade Center, and the Goldman Sachs Tower, among others. As a recognized Minority-Owned Business Enterprise (MBE) and a member of the Scaffold & Access Industry Association (SAIA), GBL is widely respected for its ingenuity, precision, and engineering excellence.

7. In the almost 20 years of operations until Covid, the Debtor operated a highly successful and respected business that never had a losing quarter.

8. Beginning in April, 2017, GBL's major creditor was Bank of America ("BoA"). BoA had made four secured loans to GBL with maturity dates in late 2023.

9. The global pandemic beginning in 2020 and subsequent business and construction shutdowns, were devastating to GBL.

10. After GBL restarted its operations post Covid, it had not been successful in extending the term of the notes it had with BoA.  Despite several efforts to renegotiate its loans with BoA, in May, 2025 the Bank declared the notes to be in default, and accelerated the loans and demanded payment in full.

### McCORMICK 103's ENTRY

11. In early June, 2025, the BoA sold the loans to McCormick 103, LLC ("McCormick") for an unknown amount, and assigned their rights under the loans to McCormick 103, which wasted no time in attempting to cash out the loans.

12. GBL had attempted to negotiate terms with McCormick, but only one month after receiving the loan assignments, McCormick commenced a Summons and Complaint in U.S. District Court against GBL, GL, Gregory L. Beeche individually, and the New York State Department of Taxation and Finance. The Complaint requested foreclosure against real property owned individually by Gregory Beeche, a deficiency judgment for the balance owed after the foreclosure, a money judgment against all defendants, and replevin against GBL and GL.  In addition, the Plaintiff, McCormick asked for the appointment of a receiver over the real property, personal property, GBL and GL.

13. On July 23, 2025, GBL received notification of the lawsuit along with approximately 500 pages of documentation.  The summons indicated that GBL had 21 days to respond to the motion.

14. Greg Beeche spoke to several attorneys in an attempt to retain counsel for GBL to respond to the lawsuit.

15. In what has become a pattern by McCormick of trying to rush litigation before the Debtor can properly respond, instead of allowing the defendants their 21 day period to respond,

McCormick filed an Emergency Motion on July 28, 2025, returnable on August 1, 2025, with Defendants' response due by 5:00 PM on July 30, 2025, giving them only two days to respond.

16. GBL and Gregory Beeche were unable to retain counsel to respond to the Emergency Motion in time to answer.

17. Gregory Beeche, however, did retain counsel on July 30 to file a personal Chapter 13 case.

18. Despite McCormick's awareness of the personal Chapter 13 by Gregory Beeche, the August 1, 2025 Emergency Hearing was held in District Court without any representation or appearance by the defendants.  The District Court agreed to appoint a receiver, Dotan Y. Melech ("Receiver") on an interim basis to take over assets of GBL, GL and Gregory Beeche, who was protected by the Chapter 13 automatic stay.

19.  On August 8, 2025 the District court appointed Dotan Melech as receiver over all of the assets and operations of the Debtor and GL.

## DISCUSSION

20. The Bankruptcy Code defines "custodian" as any "receiver" or trustee of any property of the Debtor appointed in a case or proceeding not under the Bankruptcy Code. (See 11 USC § 101(11))

21. Here, Dotan Melech was appointed as receiver over the Debtor under the District Court proceeding.

22. Mr. Melech is a "custodian" for the purposes of the Bankruptcy Code.

23. The Bankruptcy Code requires any entity appointed as custodian, "to deliver to the Trustee any property of the Debtor held by or transferred to such custodian…on the date

that the Custodian acquires knowledge of the commencement of the case." 11 USC § 543(b)(1).

24. The Bankruptcy Code further directs the Custodian to submit an accounting of all property of the estate that the Custodian may have controlled. 11 USC § 543(b)(2).

25. McCormick's Motion alleges that Gregory Beeche is "grossly incompetent", that the Chapter 11 filing is only "to promote the selfish interests of Beeche", that its sole purpose "is to obstruct and frustrate the Secured Creditor and prevent the receiver from completing a liquidation sale", that "Beeche cannot be trusted to act in the best interest of creditors"

26. Debtor strongly disagrees with many, if not most of the allegations made in Creditor's Motion, including that he "obstructs and harasses the receiver", that the Chapter 11 was filed in bad faith, that the Debtor "has no operations", that this is a "two-party dispute", that "the Debtor has no earning power", that there is "no reasonable probability for reorganization" and that "the Debtor's reorganization is objectively futile".

27. The Debtor contends that Gregory Beeche's management of the Debtor is essential for the Debtor's reorganization and is in the best interests of all of the creditors and the estate because Mr. Beeche's management of the Debtor will enable the creditors to receive the maximum return on their claims.

28. From soon after the Receiver assumed his role, he has, at the apparent urging of McCormick, tried to simply liquidate Debtor's assets, for an amount far below their true value.

29. On information and belief, the Receiver signed an exclusive agreement to sell GBL's assets to an entity that had previously been negotiating with Mr. Beeche for a much

higher amount. The exclusive agreement would preclude negotiations with any other entity interested in purchasing Debtor's assets.

30. Despite Creditor's claims that "The Debtor closed operations approximately two months ago" and that "the Debtor has no employees", and "has no customers", the truth is that it was the Receiver that decided not to pay for insurance from funds that were available, and it was the Receiver that decided to close operations and to stop paying employees. Similarly Creditor's claim that Debtor "has no income" is not correct in that the Receiver has been collecting and depositing receivables that have been paid by Debtor's customers.

31. Even after the appointment of the Receiver, GBL remains a significant and viable enterprise providing comprehensive work-access services ranging from logistics planning and field training to professional engineering and master rigger support. The company operates with a robust fleet of proprietary ADT modules, hoists, work platforms, and electronic controls. To date, GBL has completed over 600 high-profile projects across the U.S., including in New York City, Las Vegas, Philadelphia, Cleveland, and internationally in London and Dubai.

32. GBL had, when shut down by the Receiver, a number of ongoing projects for customers, several of which are anxious to continue their relationship with GBL so that their projects can be completed.

33. One of those customers, New Hudson Facades, LLC, has very recently visited the GBL facility and has communicated that they are satisfied that Debtor has the ability, once employees are back in place, to fully conduct its business going forward. In fact, this

company is exploring a potential investment or commercial partnership with GBL. (see attached Exhibit A).

34. This customer and others have expressed their desire to hire Debtor to continue and work on several major projects in Manhattan, including towers at 2 World Trade Center, three separate towers on Park Avenue, and at least two other major projects.

35. Two other customers, Atsalis Bros. Painting and Utopia Construction of NY Corp have also expressed support and the desire to work with GBL and Gregory Beeche in the future (see attached Exhibit B).

36. Debtor urges the Court to deny Creditor's Motion to dismiss this Chapter 11 case and to deny Creditor's Motion to Excuse the Turnover of Assets pursuant to §543(d).

**WHEREFORE,** the Debtor respectfully requests this Court deny Creditor's Motion to Dismiss and to Order the Receiver to turnover all property of the estate to the Debtor immediately.

Dated: November 12, 2025  /s/ Peter A. Orville
Vestal, NY  Peter A. Orville, Esq.
Attorney for Debtor
**NOTE NEW ADDRESS**
4100 Vestal Road, Ste. 103
Vestal, NY 13850